IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| vs. : | CRIMINAL NO. 08-745-3 |
| : | |
| ADAMMYCHAL S. FLETCHER, : | |
| Defendant. : | |

**MOTION TO SUPPRESS EVIDENCE**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**RUFE, J.**                                                                             **March 18, 2010**

The Indictment in the above-captioned case charges Defendant Adammychal S. Fletcher ("Defendant" or "Fletcher") with conspiracy to distribute cocaine base, possession with intent to distribute cocaine base, and possession of a firearm in furtherance of drug trafficking.[1] Defendant has filed a Motion to Suppress all physical evidence recovered in connection with his arrest on July 30, 2008.[2] Upon consideration of Defendant's Motion, the Government's Response,[3] and an evidentiary hearing and oral argument held thereon,[4] the Court enters the following findings of fact and conclusions of law.

### I. FINDINGS OF FACT

1.     Vice Detective Randy Fey ("Fey") is a member of the Vice and Intelligence Unit of the

---

[1] Doc. No. 1. These offenses are codified in 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 924(c), respectively.

[2] Doc. No. 78.

[3] Doc. No. 87.

[4] See Doc. No. 152 (Transcript of suppression hearing held on February 17, 2010 ("Tr.")).

-1-

Allentown Police Department, and is specifically a member of the sub-unit that focuses on gang activity.[5] Fey estimates that 95% of his present cases focus on drug activity.[6] Fey has three years of experience in this gang sub-unit,[7] and has received training from various programs that focus on the investigation of narcotics, including training he received from the DEA, the Northeast Drug Training Center, and the Top Gun School.[8]

2. On July 30, 2008, Fey conducted surveillance of several known drug locations based on information that Co-Defendants Jose Figueroa ("Figueroa") and Thomas Chrin ("Chrin") were using one or more of the locations to "cook" crack cocaine.[9] Among the locations surveilled was a residence located at 965 Tilghman Street, Allentown, Pennsylvania.[10] During this surveillance, Fey dressed in plain clothes and drove an unmarked police cruiser.

3. Based on law enforcement observations and information obtained from a June 28, 2008 arrest, Fey believed that Figueroa and Chrin used the 965 Tilghman location to cook crack cocaine.[11] Notably, police sources informed Fey that an individual known as "Sam" cooked cocaine with Figueroa and Chrin at this location.[12]

4. Fey drove by the 965 Tilghman location and observed a black Subaru pull into the northeast

---

[5]Tr. at 9:7-11.

[6]Id. at 9:23-10:2.

[7]Id. at 9:12-13.

[8]Id. at 9:17-22.

[9]Id. at 10:14-21.

[10]Id. at 10:22-11:1, 11:19-12:12.

[11]Id. at 19:1-7.

[12]Id. at 16:17-17:3.

corner of the property.[13]  He recognized this black Subaru as the same vehicle used by Figueroa and Chrin on the day of the June 28, 2008 arrest.[14]

5. Fey observed Figueroa, Chrin, and Fletcher[15] exit the vehicle.[16]  Chrin drove the vehicle, Figueroa was the front seat passenger, and Fletcher was the back seat passenger.[17]

6. Fey observed the three men enter the 965 Tilghman residence.[18]

7. About ten to fifteen minutes later, Fey observed Fletcher exit the 965 Tilghman location, walk down an alleyway to the rear of the residence and meet a Hispanic individual.[19]  He then watched Fletcher and the individual make "an exchange" in the alleyway or yard.[20]  This exchange took a matter of seconds to complete before the men parted and went separate ways.[21]  Fletcher immediately returned to the 965 Tilghman location.[22]

8. Based on his experience and specialized training, Fey identified this type of exchange to be a "hand-to-hand" drug sale; he believed Fletcher to be the seller.[23]  Within a span of thirty

---

[13] Id. at 12:1-6.

[14] Id.

[15] Law enforcement discovered Defendant's name after his arrest; Fey did not yet know him on the date in question.

[16] Id. at 16:1-9.

[17] Id.

[18] Id. at 16:10-19.

[19] Id. at 19:20-20:7

[20] Id.

[21] Id.

[22] Id.

[23] Id. at 21:6-22:14.

to forty-five minutes, Fey observed Fletcher conduct two additional sales in the same manner.[24]

9. After the third hand-to-hand exchange, Fey called for marked police units to arrest Fletcher.[25] After discussing the matter on the phone with a district attorney, however, Fey postponed the arrest in order to allow the investigation of Figueroa or Chrin to proceed.[26]

10. A marked police cruiser arrived near the corner of the 900 block of Tilghman Street, but left the area after being called off by Fey.[27] Ten minutes later, Figueroa, Chrin, and Fletcher exited the 965 Tilghman location and reentered the black Subaru.[28] Chrin drove, Figueroa occupied the front passenger seat, and Fletcher sat in rear passenger area, carrying a white plastic bag.[29]

11. The three individuals left the area in the black Subaru and drove through the alleyways near the 965 Tilghman location, driving evasively and in excess of the speed limit.[30] Fey and marked police units followed the vehicle.[31]

12. A marked police unit driven by Officer Michael Mancini, using its lights and sirens, stopped

---

[24] Id. at 22:23-24:2.

[25] Id. at 24:11-19.

[26] Id.

[27] Id. at 24:23-24:4.

[28] Id. at 26:8-21.

[29] Id.

[30] Id. at 27:5-23.

[31] Id. at 27:13-19.

the black Subaru at a shopping plaza on the 1200 block of Liberty Street.[32]

13. Fey and the other officers on the scene quickly approached the black Subaru in order to prevent the possible destruction of evidence or concealment of weapons.[33]

14. Fey approached the driver's side door, Special Agent Swims approached the front passenger side, and Officer Mancini approached the back seat.[34] Fey noticed Fletcher throwing some items, including a white powdery substance, in and around the back seat.[35] Officer Mancini climbed inside the car and pulled Fletcher out after he failed to comply with instructions to exit the vehicle.[36] According to Fey, there was white powder all over the interior of the vehicle.[37] All three men were arrested.[38]

15. A frisk of Figueroa at the scene resulted in the discovery of at least one ectasy pill.[39] Police discovered more drugs on his person during a later strip search at police headquarters.[40]

16. Fey discovered that there was an outstanding warrant for Chrin.[41] When he removed him

---

[32] Id. at 28:8-16.

[33] Id. at 29:17-21.

[34] Id. at 29:22, 30:1.

[35] Id. at 30:7-23. At least one bag of powder recovered from Fletcher later tested positive as cocaine. Id. at 30:20-31:3.

[36] Id. at 30:4-16.

[37] Id. at 30:9-10.

[38] Id. at 29:22-31:9.

[39] Id. at 31:8-15.

[40] Id. at 31:16-19.

[41] Id. at 32:11-17.

from the Subaru, Fey noticed a bag sticking out of Chrin's pocket.[42] The bag contained drugs, which Chrin surrendered voluntarily.[43]

17. Two bags of suspected controlled substances were recovered from Fletcher, with at least one bag being positively identified as cocaine.[44] The white plastic bag observed earlier on Fletcher's person contained a cook plate or a scale.[45]

18. Following the arrest of Figueroa, Chrin, and Fletcher, Vice Detective Fey obtained a search warrant for the apartment at 965 Tilghman.[46] Chrin had informed Fey at the scene that he should return to that location, but explained that the residence contained two pistols and a shotgun; in fact, three firearms were recovered in the search pursuant to the warrant.[47] Police also seized additional cocaine, cooking agents (isotol, baking powder and baking soda), and drug paraphernalia from the residence.[48] Police used a key obtained from Fletcher to enter the apartment.[49]

## II. DISCUSSION OF APPLICABLE LAW

Defendant asserts only one argument for why the evidence gathered as a result of the July 30, 2008 arrest should be excluded: he claims that the stop of the black Subaru was not

---

[42] Id.

[43] Id. at 32:11-21.

[44] Id. at 30:17-25, 31:1-3.

[45] Id. at 33:18-24, 37:13-25, 38:1.

[46] Id. at 33:10-24.

[47] Id. at 34:4-25, 35:1-2.

[48] Id. at 35:3-23.

[49] Id. at 36:1-12.

supported by reasonable suspicion, and thus the resulting search and seizure violated the Fourth Amendment. The burden is on the Government to prove by a preponderance of the evidence that any warrantless search or seizure that occurred was lawful,[50] and that any consent given to search was voluntary.[51]

The Fourth Amendment of the United States Constitution prohibits "unreasonable searches and seizures."[52] In particular, the warrant requirement acts as a protection against Fourth Amendment violations by law enforcement. The issue here deals with one of the exceptions to the warrant requirement in which "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot" (*i.e.*, a Terry stop).[53] The level of suspicion required by Terry is less than the probable cause standard and need not be supported by a preponderance of the evidence.[54] However, the officer must have a "'particularized and objective basis' for suspecting legal wrongdoing"[55] and it must be more than a mere inchoate hunch.[56] The expertise level of law enforcement officers may

---

[50] See United States v. Morales, 861 F. 2d 396, 399 (3d Cir. 1988).

[51] See United States v. Matlock, 415 U.S. 164, 177-78, n.14 (1974).

[52] U.S. Const., amend. IV.

[53] Illinois v. Wardlow, 528 U.S. 119, 123 (2000). In fact, "reasonable suspicion can be established with information that is different in quality or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." Alabama v. White, 496 U.S. 325, 330 (1990).

[54] Wardlow, 528 U.S. at 123.

[55] United States v. Arvizu, 534 U.S. 266, 273 (2002) (referencing United States v. Cortez, 449 U.S. 411, 417-418 (1981)).

[56] Terry v. Ohio, 392 U.S. 1, 27 (1968).

be an appropriate factor in this analysis.[57] Finally, a court may evaluate the objective basis for a Terry stop in view of the totality of the circumstances surrounding it.[58]

In forming a particularized and objective basis, law enforcement officers may draw on their experience and specialized training to make inferences and deductions from the cumulative information known to them.[59] Here, law enforcement officers did not stop the vehicle based on information that rose slightly above an unparticularized hunch; instead, officers relied upon a significant amount of information obtained from several sources, including observations made directly by the officers themselves. Fey observed Fletcher conduct three separate transactions that Fey reasonably believed, based on his experience and specialized training,[60] were hand-to-hand drug sales. Fey observed these transactions take place in the vicinity of 965 Tilghman, a location that Fey reasonably believed was being used as a crack cocaine cook house.[61] Fey observed Fletcher enter and leave the 965 Tilghman location with two known drug dealers. Thus, Fey had information to reasonably believe that Fletcher conducted criminal drug activity. Considering the totality of these observations and information together, the Court finds that law enforcement officers effectuated the

---

[57] Arvizu, 534 U.S. at 273-274.

[58] United States v. Nelson, 284 F.3d 472, 477-478 (3d Cir. 2002); Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997).

[59] Arvizu, 534 U.S. at 273.

[60] Fey testified that he participated in "hundreds of arrests where [he has] seen many drug transactions take place." Tr. at 21:25, 22:1.

[61] Fey's belief that 965 Tilghman was a crack cocaine cook house was based on information obtained by law enforcement officers from the June 28, 2008 arrest, as well as information provided by other sources.

stop with reasonable, articulable suspicion that criminal activity was afoot, and no violation of the Fourth Amendment occurred.[62]

### III. CONCLUSIONS OF LAW

1. Pursuant to Vice Detective Fey's observations of Mr. Fletcher's hand-to-hand transactions with unknown individuals, Fey reasonably concluded, based on his experience and specialized training, that Fletcher conducted criminal, drug-related activity.

2. Based on the knowledge obtained from the June 28, 2008 arrest and other reliable sources, law enforcement officers reasonably concluded that Fletcher conducted his criminal, drug-related activity with known drug dealers and from a location known for crack cocaine manufacture.

3. These facts, taken together under the totality of the circumstances, provided law enforcement officers with a reasonable, articulable suspicion that criminal activity was afoot, and therefore the stop of the vehicle was permissible under the Fourth Amendment.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress Evidence will be **DENIED**. An appropriate Order follows.

---

[62] Officer observations of multiple driving violations, standing alone, would permit a stop of the vehicle; however, given the evidence presented, this Court does not find that to be the primary reason for the stop.